UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

TIMOTHY J. PATE            )
                           )
                           )
v.                         )         No. 2:14-cv-150
                           )         Judge Jordan
                           )
CHRIS MATHES, Sheriff; TOM SMITH, )
Capt.; LT. FRITTS; ERIC TRIVETT, Sgt.; )
J. B. SUMERLY, Sgt.; SGT. PATERSON; )
SGT. KENT; C/O STREET; C/O MRS. )
HUSKINS; NURSE KATONA; JOHN )
DOE; and SGT. WILSON        )

### MEMORANDUM and ORDER

Acting *pro se*, Timothy J. Pate, a pretrial detainee presently housed in the Lois M. Deberry Special Needs Facility ("DSNF") in Nashville, Tennessee (for safety reasons), brings this civil rights action for declaratory, injunctive, and monetary relief, under 42 U.S.C. § 1983, asserting that he was subjected to unconstitutional treatment and conditions at the Carter County Detention Center ("CCDC") for several days in March and in July of 2014, (Docs. 1 and 14). Plaintiff's motion to amend the complaint is **GRANTED**, (Doc. 3), and the Court will consider the complaint, the supplemental complaint, and the amended complaint in this screening order, (Docs. 1, 4, 14).

Plaintiff's application to proceed *in forma pauperis* is **GRANTED**, (Doc. 2). However, since plaintiff is a prisoner, he is **ASSESSED** the full filing fee of three hundred, fifty dollars ($350.00). 28 U.S.C. § 1914(a); *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

The custodian of plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B).

Thereafter, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 has been paid to the Clerk's Office. *Id.; McGore*, 114 F.3d at 607.

To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the DSNF and to Tennessee Department of Correction Commissioner Derrick D. Schofield. Payments should be sent to: Clerk, USDC; 220 West Depot Street, Suite 200; Greeneville, TN 37743. This order shall be placed in plaintiff's jail file and follow him if he is transferred to another correctional facility.

I. Screening.

The Court now must screen the pleadings to determine whether the case should be dismissed as frivolous, malicious or for failure to state a claim or because monetary damages are sought from a defendant who is immune from such relief. 28 U.S.C. § 1915(e) (2) and § 1915A. In performing this task, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). All well-pleaded allegations in

the complaint will be taken as true and the factual allegations will be considered to determine whether "they plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). The Court examines the complaint in light of those requirements.

## II. Plaintiff's Allegations.

The pleadings contain the following contentions. Plaintiff was transported from the DNSF to the CCDC for a court appearance on March 6, 2014, and housed in Cell I-7 in the Intake/Booking area. For the 3½ days he remained in the CCDC, he was deprived of a mattress for sixteen hours a day, pursuant to a policy that inmates in that area of the facility are to be supplied mattresses and blankets only from 10:00 P.M. at night until 6:00 A.M. in the morning. Furthermore, that area of the jail is noisy and is kept lighted continuously—conditions which deprived him of a good night's sleep. Plaintiff's requests to turn off the lights were not honored.

Plaintiff asserts that he should have been taken to the Classification area of the CCDC, where the housing conditions are better and where inmates are allowed beds, mattresses, blankets, showers, toilets, and the like. Plaintiff maintains that, as a result of being deprived of a mattress and blanket and being forced to sit on a cold concrete slab during his brief period of confinement in the CCDC, he developed an inflamed nerve in his back, for which he received medical treatment at the CCDC (i.e., a visit from defendant Nurse Katina, who gave him a steroid injection and Ibuprophen) and later at the DSNF (visits with two doctors and medications consisting of steroids, Ibuprohen, Tylenol, muscle relaxers, and anodynes). In a separate filing, he explains that he has enjoyed an 85% recovery from that malady, (Doc. 8 at 1).

Plaintiff was returned to the CCDC on around 10:30 P.M. on July 14, 2014, booked into the jail at 2:30 A.M. July 15th, and assigned to D-Block. D-Block serves disciplinary purposes

3

and, as plaintiff was not subject to any disciplinary action, he instead should have been taken to the Classification section. At 12:30 P.M., a bailiff came to the cell to escort plaintiff to a court appearance and placed him in belly chains, despite plaintiff's objections that he had never been violent and that this type of restraint violated his rights. Plaintiff's twelve-year old son, who was in court to lend his father support, saw his father chained like a dog and it broke his heart. Plaintiff's lawyer also was upset in seeing his client in chains and intended to mention it to the judge, but forgot to do so as the hearing proceeded.

Plaintiff alleges that he was deprived of a basis human need when he was deprived of a mattress and blanket for 16 hours a day for 3½ days, even though he was suffering back pain. Plaintiff also alleges that he was discriminated against by being housed in the Intake/Booking area at the CCDC, rather than in the Classification area. Finally, plaintiff asserts that placing him in belly chains violated his right to be presumed innocent until proven guilty and constituted punishment to which a pretrial detainee may not be subjected.

### III. Law & Analysis.

*A. Deprivation of a Mattress and Blanket.*

The statute upon which plaintiff's lawsuit is based, i.e., 42 U.S.C. § 1983, provides for redress of the deprivation of a right guaranteed by the Constitution or laws of the United States caused by a person acting under color of state law. *See Monell v. Dep't of Soc. Serve.*, 436 U.S. 658 (1978). Pretrial detainees and convicted individuals have certain constitutional rights while incarcerated, but the source of their constitutional protections depends upon their status. The Eighth Amendment serves as primary source of protection for a convicted prisoner, *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979), whereas a pretrial detainee is entitled to same protection

4

under the Eighth Amendment by way of the Due Process Clauses of the Fifth and Fourteenth Amendments. *See id.* at 535. Thus, the analysis which applies to Eighth Amendment claims applies here as well. *Whitley v. Albers*, 475 U.S.312, 327 (1986); *City of Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

The Cruel and Unusual Punishment provision of the Eighth Amendment protects prisoners from the infliction of "unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Punishment" can be extended beyond that which is part of a sentence and can include the conditions under which an inmate is confined; thus conditions of confinement which amount to an "unnecessary and wanton infliction of pain" violate the Eighth Amendment. *Id.* An Eighth Amendment claim is composed of two parts: an objective component, which requires plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires him to show a sufficiently culpable state of mind —one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994).

A prison condition will be sufficiently serious so as to satisfy the first component of an Eighth Amendment claim if it denies a plaintiff "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 347-48 (1981); *Tillery v. Owens*, 907 F.2d 418, (3rd Cir. 1990) ("Although prisoners are, undeniably, sent to prison as punishment, the prison environment itself may not be so brutal or unhealthy as to be itself a punishment"). However, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). When prison conditions are concerned, an extreme deprivation is one "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that

5

the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

However, the length of time that an inmate is subjected to certain conditions of confinement is relevant in determining whether the confinement meets constitutional standards. *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."). Punishment may ensue where inmates are forced "to endure genuine privations and hardship over an extended period of time." *Bell*, 441 U.S. at 542.

The Sixth Circuit has held, in an unpublished disposition, that deprivation of a mattress for a two-week period did not violate the Eighth Amendment rights of a prisoner. *Jones v. Toombs*, 1996 WL 67750, * 1 (6th Cir. Feb. 15, 1996). Here, plaintiff was furnished a mattress and blanket for sleeping purposes, and the Court has found no authority for the premise that a mattress and blanket must be furnished 24 hours a day, seven days a week, or that the Constitution precludes an inmate from sitting on a cold concrete slab, for the brief period of time at issue here.

The Court, therefore, finds that, while plaintiff may have suffered discomfort by being denied a mattress and blanket for 16 hours a day for 3½ days, this was a de minimis (and brief) deprivation at the most, and does not amount to a constitutional wrong. *See Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (noting that "[t]he circumstances, nature, and duration of a deprivation ... must be considered in determining whether a constitutional violation has occurred") (citation omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Coats v. Farmer*, 2014 WL 1612700, *3 (N.D. Ala. Apr. 22, 2014) (finding that pretrial

6

detainee's allegations that his sleeping mat was removed during the daytime for a two-week period were insufficient to state a claim, as the "lack of sleeping mat during non-sleeping, daylight hours" does not rise to the level of cruel and unusual punishment); *Francis v. Altiere*, 491 Fed.Appx. 539, 543, 2012 WL 2580600, *4 (6th Cir. July 3, 2012) (holding that "a court should also consider the interrelationship between the *severe* conditions and their duration) (italics added).[1]

Finally, there remains the matter of the back injury, which plaintiff claims he sustained as a result of not being supplied with a mattress and blanket 24 hours a day for 3½ days. If a confinement condition does not deny a prisoner the minimum level of life's necessities so as to rise to the magnitude of an Eighth Amendment claim, then any claim of alleged resulting injury would most likely need to be tethered to an assertion that a prison official has been deliberate indifferent to a serious medical need of the prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (finding that deliberate indifference to an inmate's serious medical needs constitutes an unnecessary and wanton infliction of pain and, therefore, a violation of the Eighth Amendment.). In this case, there are no such allegations because, according to plaintiff's own assertions, he was visited by the CCDC nurse in response to his sick call request, he was given a steroid injection and other medications for his back problem, and the treatment of his inflamed nerves was continued upon his return to the DSNF.

*B. Equal Protection Claim*

Plaintiff next asserts that he was discriminated against by being housed in the

---

[1] This last citation is used to illustrate that the length of time which even a severe deprivation exists is a relevant factor in the calculus as to whether a condition violates the Eighth Amendment. But by no means is the citation intended to imply that the denial of a mattress and blanket during the daylight hours constitutes a severe deprivation.

7

Intake/Booking area at the CCDC, rather than in the Classification area, where the conditions were more salubrious. Plaintiff has failed to state a claim for denial of equal protection.

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The centerpiece of this Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) ("For any equal protection claim, the threshold inquiry is whether the [claimant] is similarly situated to others who allegedly received preferential treatment.") (internal citation marks omitted). To state an equal protection claim, plaintiff not only must show that he was similarly situated to the inmates in the classification unit but likewise must establish that a discriminatory purpose was a factor in the challenged decision not to permit other inmates to have visitation. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1997).

Here, plaintiff has not presented any circumstances to show that he is similarly situated to the prisoners who were housed in the classification unit. For example, plaintiff does not maintain that these inmates too were pretrial detainees transferred from another prison for a short period of time to attend court proceedings nor has he provided any other details pertinent to a cell assignment decision of inmates to the classification unit. *See Keevan v. Smith,* 100 F.3d 644, 649 (8th Cir. 1996) ("There can be no . . . meaningful comparison for equal protection purposes between two sets of inmates who are not similarly situated."). Nor has he demonstrated that a discriminatory purpose underlay the questioned decision. This claim, reduced to its essence, is that, on one occasion, he was treated differently than other inmates. A mere difference in

8

treatment does not offend the equal protection clause. *See Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) ("[P]laintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently"). Plaintiff has not stated a claim for violation of his right to equal protection.

And, the Court also notes that plaintiff has no constitutional entitlement to be assigned to any particular prison, area of a prison, or cell. *See Meachum v. Fano*, 427 U.S. 215, 224 (1983).

C. *Visible Restraints*

In the amended complaint, plaintiff maintains that he was placed in restraints to attend his July 15, 2014 court proceedings, which violated his right to be presumed innocent until proven guilty and constituted punishment to which a pretrial detainee may not be subjected.

The allegation regarding a violation of plaintiff's right to the presumption of innocence fails to state a claim. In *Bell v. Wolfish*, the Supreme Court explained:

> The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial. . . . Without question, the presumption of innocence plays an important role in our criminal justice system. . . . But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun.

*Id.*, 441 U.S. at 533 (some text and internal citations omitted). *Cf. United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir.1988) (observing that an "accused is presumed innocent and as such is entitled to all of the trappings of innocence *during trial*") (italics added).

Likewise, *Bell* is instructive with respect to plaintiff's contention that placing him in a belly

9

chain before and during his court hearing amounted to punishment.

The question presented is "whether the [restraints were] imposed for the purpose of punishment or whether [they are] but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 540. Among the legitimate governmental interests that "may justify conditions or restrictions of pretrial detention" are "ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined," as well as the maintenance of security and order and operating the institution in a manageable fashion." *Id.* at 539-540 and n. 23. The Supreme Court has also cautioned that running a prison is an extraordinarily difficult endeavor and that what measures to adopt in addressing security concerns is a matter lodged in the sound discretion of the institutional officials. *See Block v. Rutherford*, 468 U.S. 576, 591, 104 S. Ct. 3227, 3235 (1984).

Placing restraints on a pretrial detainee when he is to be escorted from a correctional facility to a courthouse for an appearance before a judicial officer is connected to legitimate governmental interests. Among those interests are ensuring the inmate's presence at the court proceeding; "managing the facility where he [is] detained," *Bell*, 441 U.S. at 540; and maintaining security there and later during his court proceeding. While plaintiff was understandably embarrassed and saddened for his son to see him shuffle into court in chains, the application of those restraints, which perhaps went beyond those that may have been necessary to ensure that he did not flee from his detention and that he showed up for his court proceeding, furthered valid governmental objectives and did not constitute punishment. *Bell*, 441 U.S. at 540. Plaintiff has not proven

10

otherwise. S*ee Block*, 468 U.S. at 584 (to show punishment in violation of the Due Process Clause, a pretrial detainee must demonstrate either an intent to punish or that questioned conduct "is not reasonably related to a legitimate goal" from which may be drawn an inference of an intent to punish).

IV. Conclusion.

For these reasons, this action will be **DISMISSED** for failure to state a claim entitling plaintiff to relief under 42 U.S.C. § 1983.

Finally, all pending motions are **DENIED** as **MOOT**, (Docs. 6-8).

A separate order of dismissal will enter.


**ENTER:**

_/s/ Leon Jordan_
LEON JORDAN
UNITED STATES DISTRICT JUDGE